# NO. 12-23-00007-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF D. B.* | § | *APPEAL FROM THE COUNTY* |
| | § | *COURT AT LAW* |
| | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

D.B. appeals from an order authorizing the administration of psychoactive medication. In his sole issue, D.B. challenges the legal and factual sufficiency of the evidence to support the trial court's order. We affirm.

## BACKGROUND

D.B. was found incompetent to stand trial and committed to Rusk State Hospital for examination and treatment with the specific objective of attaining competency. D.B. refused to take medication prescribed for his condition and denied needing medication. On January 2, 2023, Dr. Robert Lee signed an application to order the administration of psychoactive medication. After conducting a hearing, the trial court signed an order authorizing the administration of psychoactive medication. In its order, the trial court stated that the allegations in the application are supported by clear and convincing evidence. The trial court concluded that D.B. lacks the capacity to make a decision regarding the administration of psychoactive medication and that treatment with the proposed medications is in D.B.'s best interest. This appeal followed.

In his sole issue, D.B. argues that the evidence is legally and factually insufficient to support the trial court's order authorizing administration of psychoactive medication. Specifically, D.B. contends that the evidence failed to demonstrate his particular diagnosis and did not establish that the proposed medications were in his best interest.

**Standard of Review**

Texas law requires that orders authorizing administration of psychoactive medication be supported by clear and convincing evidence. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a-1) (West 2017). "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). Although the proof must weigh more heavily than merely the greater weight of the credible evidence, the evidence need not be unequivocal or undisputed. *Id*.

In conducting a legal sufficiency review when the burden of proof is clear and convincing evidence, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume that the factfinder settled disputed facts in favor of its finding if a reasonable factfinder could do so and disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id*. When reviewing factual sufficiency, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a factfinder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *Id*. We must consider whether the disputed evidence is such that a reasonable factfinder could not have reconciled that disputed evidence in favor of its finding. *Id*. If the disputed evidence is so significant that a factfinder could not reasonably have formed a firm belief in the finding, the evidence is factually insufficient. *Id*. The factfinder is the sole arbiter of the credibility and demeanor of witnesses. *In re H.R.M.*, 209 S.W.3d 105, 109 (Tex. 2006).

**Applicable Law**

A trial court may issue an order authorizing the administration of one or more classes of psychoactive medications to a patient who is under a court order to receive inpatient mental health services. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a) (1) (West 2017). The court may issue an order if it finds by clear and convincing evidence after the hearing that (1) the patient lacks the capacity to make a decision regarding the administration of the proposed medication, and (2) treatment with the proposed medication is in the patient's best interest. *Id*. § 574.106(a-1). "Capacity" means a patient's ability to (1) understand the nature and consequences of a proposed treatment, including the benefits, risks, and alternatives to the proposed treatment, and (2) make a decision whether to undergo the proposed treatment. *Id*. § 574.101(1) (West 2017). In making a finding that treatment with the proposed medication is in the patient's best interest, the trial court shall consider (1) the patient's expressed preferences regarding treatment with psychoactive medication, (2) the patient's religious beliefs, (3) the risks and benefits, from the patient's perspective, of taking psychoactive medication, (4) the consequences to the patient if the psychoactive medication is not administered, (5) the patient's prognosis if he is treated with psychoactive medication, (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication, and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication. *Id*. § 574.106(b).

**Analysis**

Dr. Lee's application, which was admitted into evidence at the hearing, states that D.B. is subject to an order for court-ordered inpatient mental health services due to his incompetency to stand trial. According to the application, Dr. Lee diagnosed D.B. with "Bipolar 1 disorder with psychotic features[.]" Additionally, the application states that (1) D.B. verbally refused to take medication voluntarily, and (2) D.B. lacks capacity to make a decision regarding administration of psychoactive medication because he is delusional about certain medications and his insight and judgment are poor. Dr. Lee indicated that if treated with medication, D.B.'s prognosis is fair, and if the medication is not administered, D.B. will suffer from "mental deterioration[.]" Additionally, Dr. Lee stated that he considered medical alternatives to psychoactive medication, determined that the alternatives will not be as effective as administration of psychoactive medication, and believes the benefits of psychoactive medication outweigh the risks. He also indicated that treatment with psychoactive medication is in D.B.'s best interest. Dr. Lee stated

3

that unless D.B. is medicated, he presents a danger to himself or others in the facility where he is being treated. Lastly, Dr. Lee indicated that he "considered less intrusive treatments likely to secure [D.B.]'s agreement to take the psychoactive medication." Exhibit A, which was attached to the application, indicated that Dr. Lee desired to administer antidepressants, antipsychotics, anxiolytics/sedatives/hypnotics, mood stabilizers, and miscellaneous drugs to D.B.

At the hearing, Dr. Satajeet Lahiri, who is currently treating D.B., testified that he did not complete the application for administration of psychoactive medication, but he reviewed Dr. Lee's application and agrees with it.[1] Dr. Lahiri explained that D.B. suffers from a mental illness and is under a court order for inpatient mental health treatment because he was found incompetent to stand trial for murder. According to Dr. Lahiri, D.B. verbally refused to take medication voluntarily, lacks the capacity to make informed decisions about medications, believes he does not need medication, has been "grandiose," and believes "he has extra skills and powers which make[] him feel that it's not necessary to take medications." Dr. Lahiri testified that D.B.'s insight is poor because he does not believe he suffers from mental illness, and D.B.'s judgment is impaired because he is "not able to act in his best interest."

Dr. Lahiri explained that Exhibit A sets forth the classifications of medication that Dr. Lee wishes to administer to D.B., and he opined that the medications are the proper course of treatment for D.B. and are in his best interest. According to Dr. Lahiri, the benefits of the medications outweigh their risks, and D.B. is "likely to regain competency faster if these medications are used." In addition, Dr. Lahiri stated that the medications would not interfere with D.B.'s ability to communicate with his attorney, and "in fact, they will facilitate communications with his attorney." Dr. Lahiri testified that when he interviewed D.B., D.B. told him he is reading the Koran, and the Koran "does not allow him to take medications."

During cross-examination, Dr. Lahiri explained that D.B. refused to take an antipsychotic medication, as well as his antihypertensive medication, and he would not allow doctors to "adjust or add other medicines." According to Dr. Lahiri, these refusals are "where [D.B.]'s lack of insight comes into play." Dr. Lahiri explained that D.B. told him the Koran restricts him from taking medications. Dr. Lahiri indicated that D.B. did not experience harmful side effects from any medications. He explained that D.B. has a history of previous hospitalizations in the state hospital, and there is "[n]o record of bad reactions" to medications in the past. Dr. Lahiri opined

---

[1] The record does not indicate why Dr. Lee did not testify.

that Abilify alone is not sufficient to treat D.B.'s condition, so D.B. was being inadequately treated at the time of the hearing.

D.B. testified that he does not object to taking Abilify. D.B. stated, "I'm trying to live for my future, but I'm being treated like a name on a piece of paper[.]" D.B. acknowledged that he suffers from a mental illness, with which he was diagnosed in 2010. With respect to religious objections, D.B. stated,

> [Dr. Lahiri] stated that just the Koran – [i]t was not the Koran. It was – we have a messenger, the man who taught the man named – the man known as Malcolm X. His name is Elijah Muhammad. He taught Malcolm X. He's in the movie Malcolm X, . . . you know, you could find his character in that movie, but – if you're not familiar with Elijah Muhammad, but I told him about – it was religious. We're – our – our diet is based on one meal a day, and the chemicals of this world is [sic] based on three meals a day. Now, I am eating three meals a day. So, I said Abilify was okay, but I – I didn't want to change medicines. I just felt somewhat extremely uncomfortable when he said I wouldn't do any medicine at all. I am working with the system, sir.

D.B. further testified, "[Dr. Lahiri] also said I was incompetent. You know, . . . I'm an Aggie. I got a degree from Texas A&M University. . . . I heard him say that I was incompetent to make a decision about my medicine. I speak pretty good. I'm – I'm decently articulate." D.B. explained that he believes Abilify is adequate to treat his condition and did not believe he needed other medications. When asked if medication is against the teachings of his religion under the Nation of Islam, D.B. stated, "Yes, sir. . . . You can mention that for sure." Additionally, D.B. stated that when he was diagnosed, "we went through a lot of different medications[]" and "I had some bad reactions. I had joint problems. I could hardly walk." D.B. indicated that he is improving with Abilify and exercise, and he stated, "if it's not broke, don't fix it[.]"

D.B. does not dispute that he suffers from mental illness, but he contends that the evidence is insufficient because Dr. Lahiri failed to identify D.B.'s specific diagnosis during his testimony. D.B. does not point us to anything in the statute requiring presentation of evidence as to the particular mental illness with which the patient was diagnosed, and we are unaware of any such requirement. *See generally* TEX. HEALTH & SAFETY CODE ANN. § 574.106. Even if such evidence were statutorily required, Dr. Lee specified in the application that D.B. suffers from "bipolar 1 disorder with psychotic features." Although Dr. Lahiri did not identify D.B.'s particular mental illness, he did testify that he reviewed Dr. Lee's application and agreed with it. He further stated that D.B. suffers from mental illness and lacks the capacity to make an informed decision about medication, and D.B. testified that he was diagnosed with a mental illness in 2010. Dr. Lahiri explained that D.B. exhibits grandiose behavior and believes he

possesses skills and powers that render medications unnecessary. Moreover, the trial court heard D.B.'s testimony and observed his demeanor.

With respect to the sufficiency of the evidence as to best interest, D.B. argues that his case is analogous to *State ex rel. E.G.*, 249 S.W.3d 728 (Tex. App.—Tyler 2008, no pet.), in which we held that the evidence was insufficient to support a finding that the proposed medications were in the patient's best interest. In *E.G.*, the only evidence regarding the patient's best interest was in the application, and we determined that a conclusory statement in the application, without testimony from a physician at the hearing, could not support the order for administration of psychoactive medication. *Id*. at 731-32. In addition, D.B. relies upon *State ex rel. B.D.*, No. 12-17-00174-CV, 2017 WL 4161297 (Tex. App.—Tyler Sept. 20, 2017) (mem. op.), in which we held that the evidence was insufficient to support a finding that administration of psychoactive medication was in the patient's best interest. In *B.D.*, we concluded that the testifying physician's testimony regarding best interest "was merely a perfunctory recitation of the conclusory statements made in [the] application." *Id*. at \*3. Moreover, in *B.D.*, the testifying physician offered no testimony regarding the consequences to the patient of not administering the medications, his prognosis if the medication is administered, or alternatives to treatment with psychoactive medication. *Id*.

We conclude that both *E.G.* and *B.D.* are distinguishable from the instant case. In this case, Dr. Lahiri testified that he reviewed Dr. Lee's application and agrees with it. Dr. Lahiri explained that D.B. will regain competency more quickly if psychoactive medications are administered, and the medications would facilitate D.B.'s communications with his attorney. Moreover, Dr. Lahiri testified that the proposed medications constitute the proper course of treatment for D.B, the benefits of the proposed medications outweigh their risks, and taking the medications is in D.B.'s best interest. Dr. Lahiri further testified that he considered alternatives, but no alternatives would work as effectively as psychoactive medications. Although Dr. Lahiri reiterated much of what was in Lee's application, his testimony addressed the majority of the required items listed in Section 574.106(b). *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(b). "While mindful that unsupported conclusions are legally insufficient to support the existence of the fact asserted, there may be a fine line between conclusory and succinct. However, the trial court may well be able to connect the dots, based on its knowledge of the law

6

and brief testimony." ***State of Tex. for Best Interest and Prot. of S.P.***, 592 S.W.3d 508, 513 (Tex. App.—Tyler 2019, no pet.).

As discussed above, in evaluating legal sufficiency, we must assume that the factfinder settled disputed facts in favor of its finding if a reasonable factfinder could do so and disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. ***In re J.F.C.***, 96 S.W.3d at 266. The trial court could have disregarded D.B.'s testimony that he does not need psychoactive medication. Considering all the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *See id.* Therefore, the evidence is legally sufficient. *See id.*

In evaluating factual sufficiency, we consider whether a reasonable factfinder could not have resolved disputed evidence in favor of its finding and, if there is such evidence, whether that evidence is so significant that a factfinder could not have reasonably formed a firm belief or conviction that administering the medication is in the patient's best interest. *Id.* The trial court was entitled to disbelieve D.B.'s testimony that he did not need psychoactive medication. The trial court could have reasonably determined that the medication's value in restoring competency outweighed the concerns D.B. expressed regarding his religious preferences and the possibility of adverse reactions. *See id.*; ***S.P.***, 592 S.W.3d at 514. There was no disputed evidence that the trial court could not reasonably have resolved in favor of its ruling. *See **In re J.F.C.***, 96 S.W.3d at 266; ***S.P.***, 592 S.W.3d at 514. Accordingly, the evidence is factually sufficient to support the trial court's finding. *See **In re J.F.C.***, 96 S.W.3d at 266; ***S.P.***, 592 S.W.3d at 514. We overrule D.B.'s sole issue.

## DISPOSITION

Having overruled D.B.'s sole issue, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered May 10, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 10, 2023**

**NO. 12-23-00007-CV**

**THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF D. B.**

Appeal from the County Court at Law
of Cherokee County, Texas (Tr.Ct.No. 43451)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*